Thank you, your honors. Good morning. May it please the court, my name is Brooks Holland and I represent Jason Tiffin. With the court's permission, may I reserve one minute for rebuttal? You may, but the time that's on the clock is the time that's remaining, so watch your time carefully. I will. All right. Your honor, Mr. Tiffin appeals the judgment of the district court following a somewhat atypical combination of guilty plea and jury verdict. Mr. Tiffin was charged with five federal offenses and one indictment covering two separate incidents, one incident from November of 2005, the other from December of 2005. Mr. Tiffin ultimately was convicted of four of these offenses. Mr. Tiffin was convicted of two counts of possessing a firearm unlawfully as a convicted felon, one from the December 2005 incident involving a handgun, one count from the November 2005 incident involving a shotgun. Mr. Tiffin also was convicted of possessing ammunition unlawfully and possessing body armor unlawfully, both from the November 2005 incident involving a shotgun. The jury at Mr. Tiffin's trial acquitted Mr. Tiffin of possessing a sawed-off and unregistered shotgun, which had been charged as a Title 26 offense. Mr. Tiffin does not raise any issues on appeal concerning his guilty plea or the jury's verdict. Instead, Mr. Tiffin challenges the district court's judgment in sentencing him to 120 months of incarceration. Counsel, may I ask you a question? He was sentenced 48 months below the advisory guideline, right? Is that correct? That is correct. How can there be prejudice in that event? We don't challenge the substantive reasonableness of the court's ultimate sentencing judgment following Rita and Gohl, where the court possesses judgment to deviate from the judgment in calculating the applicable guidelines range, which is still a necessary procedural precondition to the court exercising its ultimate sentencing judgment under Section 3553. And we raised what I think could be characterized as one legal error and three procedural errors that the district court committed in calculating Mr. Tiffin's guidelines range to be 168 to 210 months. Well, let me ask you this. If all of your objections had been granted, what would the  what was submitted, Your Honor, in light of the district court's findings and lack of findings, we would contend that the district court should not have set the total offense level beyond 22, which would have resulted in an advisory guidelines range of 84 to 105 months, which was actually well below the 120-month sentence that the district court imposed as its final sentencing judgment. When you say well below, is that 15 months below or so? Well, depending on how the court exercised its judgment within the advisory guidelines range, it could be that range to down to 84 months at the bottom of the guidelines. I think what it would do, Your Honor, is create an entirely different sentencing orientation from which the district court would need to work. The district court here exercised its discretion to vary downward from what it believed the advisory guidelines range was under the sentencing guidelines of a minimum of 168 months and went down to 120. But as I read the transcript, the district court judge made a comment about how the judge felt that the guideline range was kind of way out there, excessive under the circumstances, which gives me the impression that the district court was applying the 3553 factors to arrive at what the district judge felt was a reasonable sentence, considering those factors. You have to keep in mind now, in this circuit, not all circuits, but in this circuit, the advisory guideline range is not a presumptive sentence. That's correct, Your Honor, and you are correct that the court engaged in extended colloquy with the trial lawyers about the appropriate sentence to impose under Section 3553 and expressed concern about the guidelines range that the district court believed applied. But even within this circuit, where no presumption of reasonableness attaches to the guidelines range, we still have a circumstance where the court oriented itself in thinking about an ultimately reasonable sentence or appropriate sentence under Section 3553 in light of the U.S. We would contend erroneously that 168 months was the minimum sentence that should apply to Mr. Tiffin's convictions, and the Supreme Court in Reed and Galls made clear that a district court must correctly identify the applicable guidelines range before it exercises its final sentencing judgment under Section 3553, because this Court's reasonableness review, as deferential as it may be at this juncture, still must take into account under all of the 3553A factors the applicable sentencing guidelines range, which is still identified as an important guiding factor for the court to use in determining reasonableness. I think if the applicable guidelines range on this record instead was 84 to 105 months, we would be talking about a significantly different orientation point for the court to use to determine what the applicable sentence was. The court very well, and it's impossible to know from the record, but the district court very well may have believed that something less than 120 months may have been an appropriate final sentence under 3553 if the guidelines actually were less than the statutory maximum of 10 years that applied to any one of these offenses. The court appeared to be working towards 120 months out of concern that the guidelines were going to require consecutive sentencing on different counts, and the court seemed to believe that that was inappropriate under all the circumstances of this case. Sotomayor, I thought so. What kind of objections were made at the sentencing hearing? Well, we raised four points of error, and I would say three of them were raised by defense counsel before the district court. One we acknowledged was not raised before the district court, and that concerned the appropriate burden of proof to be applied in the district court's findings of fact in support of the guidelines calculation. We acknowledged that that's subject to plain error review. For instance, with the other errors, such as the contention that the district court incorrectly applied a four-level enhancement under guideline 2K21B5 for possessing a firearm in connection with other felonies, here the theory being the felonies of possession of ammunition and possession of body armor, defense counsel raised a specific objection in his sentencing memorandum. I believe that's contained in pages 166 to 167 of the record. The government, in fact, acknowledged that objection in its own sentencing memorandum, which appears on page 81 of the record. And this issue was debated in front of the district court. Our contention deals less with the judge's findings of fact on that issue, but more the court's legal conclusion. This is the error that I characterized as a legal error. As a practical matter, if we sent this back, can you imagine that the judge would change the sentence? I think, actually, that might not be an entirely implausible scenario in light of the fact that the district court spent so much time looking at the entirety of this record and expressing concern about the direction in which the sentencing guidelines, as the district court understood the guidelines range to be 168 to 210 months. I thought this was a pretty bad guy. There's no doubt that the district court acknowledged the factors that weighed in the government's favor at the time of sentence. I mean, it appears that he thought 120 months was the right sentence. It may be that the district court would confirm, notwithstanding a different applicable guidelines range, that 120 months is the correct sentence. But I would suggest that it's impossible to know on this record, because the district court did not make clear, regardless of guidelines range, this is the sentence I would impose. The district court instead seemed to indicate, in light of the very high by the sentencing guidelines or advised by the sentencing guidelines, I'm going to work down to 120 months. It could be that if the guidelines gave the district court some guided authority to impose something less than 120 months, perhaps the district court would believe that was an appropriate final sentence. Didn't the district court at this point already know that it had the authority? The district court could have sentenced him to 87 months. Correct. The district court could have. But it didn't. It did not. This goes directly to Judge Rawlinson's comment and Judge Fletcher. It looks to me like the judge exercised 3553 discretion and said 120 months. Well, there's no doubt that you're correct, Your Honor, that the district court exercised 3553 discretion. It seems to me like whoever the defense lawyer did a pretty good job, I mean, brought the sentence down a lot. But I would say, Your Honor, brought the sentence down from a guidelines range that was initially orienting the judge, as the law requires the district court to do, to orient him or herself from an applicable guidelines range and determine a reasonableness from there. Counsel, you're down to less than a minute. So if you want to save some time. Thank you. I'll conclude. Thank you for the questions. We ask that you grant the sentencing relief that's been requested. Thank you. May it please the court. My name is Helen Bruner. I'm an assistant United States attorney here to represent the United States. This case does present somewhat of an unusual set of facts. The original guidelines range calculated by the probation office was 360 months to life. And the court, in going through the guidelines calculations at the time of sentencing, obviously rejected a number of arguments that the government in turn considered as to whether or not to pursue its cross-appeal and then ultimately rejected that decision. The court, in going through the guidelines, then arrived at a guideline range of 168 to 210 months. And I think it's clear from the record, when you read Judge Burgess's struggle here, he was struggling with the 3553A factors to arrive at a sentence that he believed was fair under the circumstances. And it's quite clear when he says, I think what I'm going to do here, considering the government's argument and defense counsel's argument, is to allow the statutory max for the one count or the firearms possession count to control here. And that's the sentence that I am going to give. Mr. Tiffin, as counsel has accurately set out, pleaded guilty to two counts and was found guilty on two counts. So I think under these circumstances, the district court really was struggling with what was a reasonable sentence here. And I think it's probably fair to say, although we will not know, we would not know unless this court remanded it and Judge Burgess were actually to say so. But I guess I would argue that, given this record, I don't believe there would be a different sentencing outcome, particularly in light of his criminal history. Can you justify the calculations that he made? Pardon me? Can you justify the calculations that he made under the guidelines? I believe I can, Your Honor. I think there are three calculations, really, that counsel has challenged. Let me go through them very quickly. The first relates to the base offense level. Counsel argues that because the jury acquitted Mr. Tiffin of the count related to possession of a sawed-off shotgun without registration, that the court should not have enhanced it based on the fact that the weapon in question was a sawed-off shotgun. The problem with that argument is that he did not challenge those particular facts in the pre-sentence report, and in any event, the unequivocal evidence at trial was that this was a sawed-off shotgun. There's no question. Even the lay witness who found the gun in the pile of leaves by the side of the road the following morning after the high-speed chase called it a chopped-off shotgun. So I don't think we're – I don't think that's an issue. The question of acceptance of responsibility, I think that's – the district court did not abuse its discretion here where Mr. Tiffin forced the government to trial on two counts, even though he pleaded guilty. He also obstructed the fifth count, the December count, if you will, the firearm that he's found within the attic when he sent the letter to his family members. That leaves us with the whether or not the sawed-off shotgun was possessed in connection with the body armor. And I think under the facts and circumstances of this case, the conclusion is that, in fact, it was possessed in connection with. What we have here is a gentleman with a long history of violent offenses, some in the involving firearms, and we have him in possession of the sawed-off shotgun at the same time that he is wearing body armor. I think under these circumstances, the district court could infer that – could certainly infer that this was potentially in facilitation – the possession of the firearm was potentially in facilitation of the body armor. The two come hand in glove. The two are designed to protect him from potential dangers that he might face as a result of his criminal activity. And given the high-speed chase that occurs before he throws the shotgun out the window, I think it's equally plausible to infer that he was engaged in other criminal activity at the time. So for that reason, I think district court's guidelines calculations here are appropriate. Does the Court have any other questions for me? It appears not. Thank you. I will rest and ask the Court to affirm the sentence. Thank you. Thank you. Rebuttal. We'll give you two minutes for rebuttal. Thank you very much, Your Honor. Your Honor, in rebuttal, if I could, I would just like to address a couple of the substantive points that the government raised about the issues that were raised in Mr. Tiffin's opening brief. And for particular, I'd like to address the argument that the district court correctly imposed a four-level enhancement under Guideline 2K21B5 because Mr. Tiffin possessed the shotgun in connection with the felonies of possessing an initial and lawfully possessing body armor. The problem with this argument is that it contradicts this Court's jurisprudence construing the in connection with language to mean something more than mere contemporaneous possession of the firearm with another felony. This Court consistently has held that the in connection with language requires proof by the government that the firearm possession facilitated, which this Court has understood to mean emboldened or potentially emboldened, the other felony in connection with which the firearm was possessed. And you can see that type of relationship in the paradigm examples that the case law has identified for application of this guideline enhancement. Possession of a firearm during a burglary. Possession of a firearm during the possession or transportation of stolen property. Possession of a firearm during a robbery or the possession or distribution of drugs. You can see here that the other felony has some independent felonious purpose or role independent of the firearm that the firearm therefore can embolden, can facilitate. Here the body armor and ammunition had no independent purpose or function from the firearm that the firearm was emboldened. Didn't the district court find that the body armor emboldened him to engage essentially in his activities with respect to his possession of the weapon because it provided him some additional protection during this flight that he was engaged in, this high speed chase, the idea being that, you know, please shoot at him, he's got some body armor. I believe that's correct, Your Honor, that that was the theory that the government argued and that the district court adopted. But if you look closely at that theory, Your Honor, it's essentially a theory that the possession of the body armor and the possession of the shotgun shells facilitated or emboldened his possession of the firearm, which is the converse relationship that this sentencing guideline factor requires. It required for the firearm to facilitate or embolden the possession of the body armor and the shotgun shells.  I was just going to say, but having the shotgun could embolden him to have the body armor because then that could protect him from anybody who was trying to divest him of the body armor or the ammunition. So although it might not be the typical scenario, it's plausible. And that's, you know, so it's difficult to say that the district court judge, you know, was completely out of bounds in terms of making that resolution. Your Honor, I would say that the argument is premised upon the court's identification of an emboldening function as key to the connection with language here. I understand. Thank you very much. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Fowle v. Astrum.
judges: Fletcher, Rawlinson, Ezra